IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| NAUTILUS INSURANCE COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 3:25-cv-104-DWD |
| ) | |
| CSN ENTERTAINMENT, LLC, MYKEL ) | |
| DAVIS, KAREN HAYNES, and ) | |
| AYONN GRAY, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM & ORDER

**DUGAN, District Judge:**

On January 4, 2025, Plaintiff, Nautilus Insurance Company ("Nautilus"), filed this action for declaratory judgment, pursuant to 28 U.S.C. § 2201, against Defendants CSN Entertainment, LLC ("CSN"), Mykel Davis, Karen Haynes, and Ayonn Gray. Plaintiff seeks a declaration that it does not owe a duty to defend or indemnify CSN in an underlying lawsuit brought by Mykel Davis, Karen Haynes, and Ayonn Gray, cause number 2024-LA-0484, in the Circuit Court of St. Clair County, Illinois, against CSN and others. Now before the Court is Plaintiff's Motion for Judgment on the Pleadings. (Doc. 23). For the reasons detailed below, the Motion is **GRANTED.**

## I.   BACKGROUND

### A.   *The Underlying Action*

This case arises from an underlying lawsuit filed on October 18, 2024, by Mykel Davis, Karen Haynes, and Ayonn Gray, styled as *Mykel Davis et al, v. Beast Mode, LLC and CSN Entertainment, LLC*, cause number 2024-LA-0484 (the "Underlying Action"). The

Underlying Action asserts causes of action against CSN for Negligent Hiring and Retention (Counts XIII, XIV, & XV).

In the Underlying Action, Claimants allege that CSN breached its duties to hire, retain, and/or supervise its hired security service. (Doc 1-1). Claimants allege that they sustained serious personal and bodily injuries as a result of CSN's negligence (Doc. 1-1, ¶¶ 65, 71, 78). CSN failed to appear or answer in the Underlying Action, so a final judgment was entered against CSN in the amount of $300,000 on March 10, 2025. (Doc. 10, ¶ 7; Aff. Def. 3).

### B.    The Nautilus Policy

Nautilus issued a commercial general liability insurance policy to CSN that was in effect during the relevant period, namely, from July 29, 2022, to July 29, 2023 (the "Policy"). (Doc. 1-2). The Policy provides coverage for "bodily injury" that is caused by an "occurrence" during the policy period. (Doc. 1-2, pg. 13).

The Policy includes form endorsement L210 (12/19), "Exclusion – All Assault or Battery" (hereinafter, the "Assault or Battery Exclusion"). (Doc. 1-2, pgs. 4, 37-38). It states that

> This insurance does not apply to "bodily injury", "property damage", "personal and advertising injury" or medical payments arising out of any actual or alleged:
>
> 1. "Assault" or "battery" caused, directly or indirectly, by you, any insured, any person, any entity, or by any means whatsoever; or
>
> 2. Failure to suppress or prevent "assault" or "battery" by you, any insured, any person, any entity, or by any means whatsoever; or

3. Failure to provide an environment secure from "assault" or "battery"; or

4. Failure to warn of the dangers of the environment which could contribute to "assault" or "battery"; or

5. Use of any force to protect persons or property whether or not the "bodily injury", "property damage" or "personal and advertising injury" was intended from the standpoint of you, any insured, or any person, or committed by or at the direction of you, any insured or any person; or

* * *

This Exclusion applies:

* * *

2. To all causes of action arising out of any "assault" or "battery" including, but not limited to, allegations of negligent hiring, placement, training, or supervision, or to any act, error, or omission relating to such an "assault" or "battery";

* * *

4. To any obligation to share damages with or repay someone who must pay damages because of the injury.

(Doc. 1-2, pg. 37).

Two other exclusions are also relevant here. First, the Policy's Weapons Exclusion precludes coverage for any "bodily injury" arising out of the use of any "weapon" or any ammunition or firearm accessory for any "weapon." (Doc. 1-2, pg. 43). The exclusion "applies even if the claims against any insured allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by that insured." (Doc. 1-2, pg. 43). Second, the Policy contains a Contractors and Subcontractors Exclusion that precludes coverage for any " 'bodily injury'…or medical payments arising out of

work performed by any contractor or subcontractor whether hired by or on behalf of any insured, or any acts or omissions in connection with the general supervision of such work." (Doc. 1-2 pg. 42).

## II.    JURISDICTION

### A.    *Subject Matter Jurisdiction*

The Court has subject matter jurisdiction over this case pursuant to the federal diversity statute, 28 U.S.C. § 1332. Nautilus is an Arizona corporation with its principal place of business in Arizona. CSN is an Illinois limited liability company with its principal place of business in Illinois. The citizenship of the parties is completely diverse and the amount in controversy is alleged to exceed $75,000, exclusive of interest and costs, as the effect of granting relief would be to void coverage for a loss likely to exceed $75,000 in value. *See, e.g.*, *RSUI Indem. Co. v. JMT Dev. Inc.*, 572 F. Supp. 3d 482, 486 (N.D. Ill. 2021) ("In the insurance context, both the cost of providing a defense and the potential cost of indemnifying [the insured] count toward the amount in controversy.") (internal quotations omitted).

### B.    *Mootness*

Claimants argue Plaintiff's declaratory judgment action as to its duty to defend is moot because final judgment has been entered in the Underlying Action and the time to initiate an appeal has expired. (Doc. 24, pgs. 7-9). When a question about mootness arises, federal courts must address it. *See Ruggles v. Ruggles*, 49 F.4th 1097, 1099 (7th Cir. 2022). The mootness doctrine implements Article III's case or controversy requirement by preventing federal courts from resolving questions that cannot affect the rights of the

parties before them. *See North Carolina v. Rice*, 404 U.S. 244, 246 (1971). The case-or-controversy requirement continues through all stages of federal judicial proceedings, trial and appellate. *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990). Declaratory judgment actions concerning an insurer's duty to defend are not moot after the underlying action has concluded when there is still a live dispute over whether the insurer is responsible for defense costs already incurred. *See Old Republic Ins. Co. v. Chuhak & Tecson, P.C.*, 84 F.3d 998, 1001 (7th Cir. 1996). CSN has also not abandoned its claim for pre-judgment defense costs under the Policy. (Doc. 25, pg. 5). The parties have a stake in the outcome of this declaratory judgment action, *i.e.*, in whether Nautilus had duties to defend and to reimburse CSN for pre-judgment defense costs. Accordingly, Plaintiff's declaratory judgment action as to its duty to defend is not moot.

### III.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(c) allows a party to move for judgment on the pleadings "[a]fter the pleadings are closed – but early enough not to delay trial." Fed. R. Civ. P. 12(c). When a Rule 12(c) motion attempts to resolve a case "on the basis of the underlying substantive merits," courts apply the summary judgment standard while considering only the contents of the pleadings. *Alexander v. City of Chicago*, 994 F.2d 333, 336 (7th Cir. 1993); *accord U.S. v. Milosevic*, 414 F. Supp. 3d 1119, 1121 n. 2 (N.D. Ill. 2019). Pleadings include the complaint, the answer, and any written instruments attached as

exhibits.[1] Fed. R. Civ. P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is part thereof for all purposes.").

Courts should grant judgment on the pleadings when there are no disputed issues of material fact, and it is clear that the moving party is entitled to judgment as a matter of law. *Unite Here Loc. 1 v. Hyatt Corp.*, 862 F.3d 588, 595 (7th Cir. 2017). A genuine dispute as to any material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Facts and inferences drawn from the pleadings' allegations are to be viewed in the light

---

[1]In their Response in Opposition to Plaintiff's Rule 12(c) Motion for Judgment on the Pleadings, Claimants attached multiple exhibits. (Doc. 24, generally). Further, in its Reply in Support of its Rule 12(c) Motion for Judgment on the Pleadings, Plaintiff also included multiple exhibits. (Doc. 25, generally). Plaintiff also stated: "The Court, however, may convert Nautilus' Motion to one for Summary Judgment and enter judgment in favor of Nautilus where there are no disputed issues of material fact and Nautilus is entitled to judgment as a matter of law." (Doc. 25, pgs. 1-2 n. 1); *see also* Fed. R. Civ. P. 12(d) ("If, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56. All parties must be given a reasonable opportunity to present all the material that is pertinent to the motion."). Here, the Court can properly reach its decision based on the pleadings, without the need to rely on the exhibits; therefore, it will not convert Plaintiff's Motion for Judgment on the Pleadings to one for summary judgment. *See Federated Mut. Ins. Co. v. Coyle Mech. Supply Inc.*, 983 F.3d 307, 313 (7th Cir. 2020) ("A district court has discretion as to whether to convert a motion for judgment on the pleadings into a motion for summary judgment. If, however, a court chooses to consider materials outside the pleadings, the discretion ends, and the court 'must' treat the motion as one for summary judgment. At the same time, a district court's failure to convert a motion for judgment on the pleadings into a motion for summary judgment will not necessarily mandate reversal unless the record discloses the existence of unresolved material fact issues, or the parties represent that they would have submitted specific controverted material factual issues to the trial court if they had been given the opportunity. In other words, a district court's failure to treat the motion as one for summary judgment does not require reversal if the error was harmless.") (internal citations omitted) (cleaned up); *Lisby v. Henderson*, 74 F.4th 470, 472 (7th Cir. 2023) ("The district court ordinarily has discretion to convert a motion for judgment on the pleadings to a motion for summary judgment; only when the district court considers materials beyond the pleadings is it required to convert a Rule 12(c) motion to one for summary judgment. Because the district court did not stray beyond the pleadings, and [the plaintiff] has not identified any evidence that would have any bearing on the motion, the district court did not err in dismissing the complaint on the pleadings."); *Ruebe v. PartnerRe Ireland Ins. DAC*, 470 F. Supp. 3d 829, 844 (N.D. Ill. 2020) ("If a court considers material outside the pleadings, the court must convert the motion for judgment on the pleadings into a motion for summary judgment and allow all parties a reasonable opportunity to present evidence, including 'all the material that is pertinent to the motion.' The Federal Rules vest district courts with discretion to convert (or not convert) a motion for judgment on the pleadings to a motion for summary judgment.") (internal citations omitted).

most favorable to the non-moving party. *Alexander,* 994 F. 2d at 336 (citing *Republic Steel Corp. v. Pennsylvania Eng'g Corp.*, 785 F.2d 174, 177 n.2 (7th Cir. 1986)).

## IV.    DISCUSSION

### A.    *Duty to Defend*

Nautilus seeks a declaration that it does not owe a duty to defend CSN under the Policy with respect to the Underlying Action. An insurer's duty to defend is determined by comparing the allegations in the underlying complaint to relevant provisions of the insurance policy. *Health Care Indus. Liab. Ins. Program v. Momence Meadows Nursing Ctr., Inc.*, 566 F.3d 689, 694 (7th Cir. 2009). "An insurer is obligated to defend its insured if the underlying complaint contains allegations that potentially fall within the scope of coverage." *Id.* (citing *Lyerla v. AMCO Ins. Co.*, 536 F.3d 684, 688 (7th Cir. 2008); *Gen. Agents Ins. Co. of Am. v. Midwest Sporting Goods Co.*, 215 Ill.2d 146, 155 (Ill. 2005)). In other words, "[a]n insurer may refuse to defend only if 'it is clear from the face of the underlying complaint that the allegations set forth in the complaint fail to state facts that bring the case within, or potentially within, the coverage of the policy.' " *Health Care Indus. Liab. Ins. Program*, 566 F.3d at 694 (quoting *Valley Forge Ins. Co. v. Swiderski Elecs, Inc.*, 223 Ill.2d 352, 363 (2006)).

Nautilus argues the undisputed facts as pled in the Underlying Action demonstrate that coverage under the Policy is precluded by the Assault or Battery Exclusion, the Weapons Exclusion, and the Contractors and Subcontractors Exclusion. (Doc. 23, pgs. 11-17). CSN has not offered any argument in rebuttal. Claimants only argue Nautilus breached its duty to defend CSN because Nautilus failed to timely file a

declaratory judgment action. (Doc. 24, pg. 10). However, Nautilus is only required to timely file a declaratory judgment action when the underlying complaint against the insured alleges factors within or potentially within the scope of the policy coverage. *State Farm Fire & Cas. Co. v. Martin*, 186 Ill. 2d 367, 371 (1999) (collecting cases). As explained below, the complaint in the Underlying Action did not allege factors within or potentially within the scope of the policy coverage. Accordingly, Nautilus was not required to timely file a declaratory judgment action.

The portions of the Underlying Action relevant to the instant case allege that Claimants were struck or otherwise assaulted by employees of a security contractor that CSN negligently hired and failed to supervise. (Doc. 1-1, Counts XIII-XV). Accepting these facts as true, as the Court must here, they clearly fall within the exclusions of the Policy. The Policy's Assault or Battery Exclusion precludes coverage for any harmful or offensive contact to any person and caused by any person, and for the failure to prevent harmful or offensive contact by any insured, any person, or any entity. (Doc. 1-2, pgs. 37-38). The Weapons Exclusion bars coverage for any "bodily injury" or medical payments arising out of the use of any weapon, including brass knuckles. (Doc. 1-2, pg. 43). And, finally, the Contractors and Subcontractors Exclusion states that any "bodily injury" or medical payments arising out of work performed by any contractor or subcontractor is not covered by the Policy. (Doc. 1-2, pg. 42). All three of these exclusions apply to the Underlying Action. In light of the plain language of the Policy and the lack of any arguments that the underlying complaint alleges factors that fall within the scope of the Policy's coverage, the Court concludes coverage for the Underlying Action is precluded

by these exclusions in the Policy. Because coverage for the Underlying Action is precluded by exclusions in the Policy, Nautilus has no duty to defend. *See Del Monte Fresh Produce N.A., Inc. v. Transportation Ins. Co.*, 500 F.3d 640 (7th Cir. 2007) (finding insurer has no duty to defend when underlying allegations fall squarely within policy exclusions).

Finally, Defendants argue Nautilus is estopped from asserting coverage defenses for the claims arising out the Underlying Action because it failed to fulfill its duty to defend. The estoppel doctrine in Illinois does not apply when an insurer had no duty to defend. *See Emps. Ins. of Wausau v. Ehlco Liquidating Tr.*, 186 Ill.2d 127, 151 (1999). The estoppel doctrine does not apply to this action because, after comparing the Policy and the complaint in the Underlying Action, it is clear there was no potential for coverage.

### B.    Duty to Indemnify

The duty to defend is much broader than the duty to indemnify. *Health Care Indus. Liab. Ins. Program*, 566 F.3d at 693. Given the Court's finding above, as to the duty to defend, it also finds there is no duty to indemnify. *See id.* ("[A] finding of no duty to defend necessarily precludes a finding of a duty to indemnify").

### V.    CONCLUSION

The Court **GRANTS** Nautilus' Motion for Judgment on the Pleadings. (Doc. 23). The Court **FURTHER DECLARES** that (1) the Policy's Assault and Battery, Weapons, and/or Contractors and Subcontractors Exclusions bar coverage under the Policy for all claims, injuries, or causes of action asserted against CSN in the Underlying Action, and (2) that Nautilus Insurance Company had no duty under the Policy to defend CSN

Entertainment, LLC, in the Underlying Action or to indemnify CSN Entertainment, LLC,

for the judgment entered in the Underlying Action.

**SO ORDERED.**

Dated: February 11, 2026

s/ *David W. Dugan*
_____
DAVID W. DUGAN
United States District Judge